**SO ORDERED.**

**SIGNED this 19th day of December, 2012.**



Janice Miller Karlin
United States Bankruptcy Judge

___

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br>**Roger Paul Kunze**<br>**Brenda Kay Kunze,** | Case No. 09-41075<br>Chapter 7 |
| Debtors. | |

| | |
|---|---|
| **Patricia E. Hamilton, Trustee,** | |
| Plaintiff,<br>v. | Case No. 11-07029<br>Adversary Proceeding |
| **CitiMortgage, Inc.,** | |
| Defendant. | |

### Memorandum Opinion and Order Granting
### Defendant CitiMortgage, Inc.'s Amended Motion for Summary Judgment

Plaintiff, Chapter 7 Trustee Patricia Hamilton (the "Trustee"), brought this adversary proceeding generally challenging the standing of, and lien and mortgage held by, Defendant CitiMortgage, Inc. ("CitiMortgage") regarding the real property

owned by Debtors Roger and Brenda Kunze on the date they filed bankruptcy. The Court previously granted, in part, CitiMortgage's motion to dismiss for failure to state a claim,[1] leaving only the Trustee's challenge to the validity, priority, or extent of CitiMortgage's lien or interest in the Debtors' property.

CitiMortgage has now moved for summary judgment[2] on this remaining claim, arguing that at all pertinent times Mortgage Electronic Registration System, Inc. ("MERS") served as agent for the holder of the beneficial rights in the mortgage and note at issue, there was no split in the mortgage and note, and CitiMortgage held a valid interest in the Debtors' property as of the date Debtors filed bankruptcy. Because the Court finds no split of the mortgage and note throughout the endorsements and assignments of those documents due to an existing agency relationship between the holders of the note and MERS, the Court grants the amended motion for summary judgment.

This matter constitutes a core proceeding over which the Court has the jurisdiction and authority to enter a final order.[3]

## I. Findings of Fact

On April 25, 2006, Debtors signed a promissory note to Kaw Valley State Bank & Trust Co. ("Kaw Valley") for $92,950 to secure the purchase of real estate,

---

[1] Doc. 25.

[2] Doc. 70.

[3] *See* 28 U.S.C. § 157(b)(2)(K) (stating that "determinations of the validity, extent, or priority of liens" are core proceedings) and § 157(b)(1) (granting authority to bankruptcy judges to hear core proceedings).

-2-

Case 11-07029 Doc# 78 Filed 12/19/12 Page 2 of 13

improvements, and a mobile home in Wamego, Kansas. Debtors simultaneously signed a mortgage to Kaw Valley, granting Kaw Valley a lien in the property. The mortgage was properly recorded two days later with the local register of deeds.

The promissory note contains two endorsements, although neither endorsement is dated. The first endorsement is from Kaw Valley to Irwin Mortgage Corporation ("Irwin Mortgage"). The second endorsement is from Irwin Mortgage, endorsing the note in blank. CitiMortgage states that this second endorsement was made "upon receipt" by Irwin Mortgage, so around August 30, 2006.

There were also two assignments of the mortgage. The first assignment, dated April 25, 2006—the same date the Debtors signed the note and mortgage, transferred the mortgage from Kaw Valley to MERS, and the assignment was simultaneously recorded with the register of deeds. The second assignment, dated September 1, 2009, is from MERS to CitiMortgage; that assignment was recorded with the register of deeds on September 21, 2009.

Given these relevant dates, the Court must examine how the MERS system operated between April 2006 and September 2009.[4] When Kaw Valley assigned the

---

[4] The affidavit of Daniel McLaughlin, vice president of MERS and executive vice president of MERSCORP Holdings, Inc., states that MERS is a private stock corporation whose shareholders and members include originating lenders and secondary investors that use its services. The business purpose of MERS is to hold record title to mortgages and deeds of trust on behalf of beneficial owners. MERS is designed to allow its members to accurately and effectively track transfers of servicing rights and beneficial ownership in notes that are secured by the mortgages and deeds of trust held by MERS.

The MERS membership agreements incorporate certain governing documents; these require MERS members to "promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS System" and state that "MERS shall serve as

mortgage to MERS in April 2006, Irwin Mortgage was a MERS member (and remained a MERS member throughout its ownership of the note and mortgage). Pursuant to an operating agreement between MERS and Irwin Mortgage, MERS held legal title to mortgages on behalf of Irwin Mortgage (and Irwin Mortgage's successors and assigns). Shortly thereafter, on May 15, 2006, Irwin Mortgage transferred its beneficial rights in the note and mortgage to Government National Mortgage Association ("Ginnie Mae"), who was also then a member of MERS. Irwin Mortgage remained the servicer for the note and retained possession of it.

On December 18, 2006, Irwin Mortgage granted CitiMorgage the authority to sign or endorse on Irwin's behalf its servicing obligations, including executing satisfactions, releases, modifications, assignments, and note endorsements. Shortly thereafter, on January 11, 2007, Irwin Mortgage also executed a limited power of attorney that allowed CitiMortgage to assume instruments, and the mortgage notes secured thereby, in the name of Irwin Mortgage. The limited power of attorney also gave CitiMortgage the right to collect, accelerate, initiate suit, and/or foreclose on all loans covered by the agreement. CitiMortgage[5] has been a member of MERS, subject to the MERS terms, conditions, and rules of membership, throughout the relevant time

---

mortgagee of record with respect to all such mortgage loans solely as nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time." In addition, the MERS governing documents require that MERS shall at all times comply with the instructions of the holder and beneficial owner of mortgage loan promissory notes, and authorize MERS to take certain actions at the direction of the holder and beneficial owner, such as assigning the mortgage or instituting a foreclosure action.

[5] CitiMortgage originally became a member of MERS under the name Source One Mortgage Corporation. Source One's name was changed to CitiMortgage on April 3, 2000.

-4-

period. As members of MERS—and pursuant to their agreements with MERS—Irwin Mortgage, Ginnie Mae, and CitiMortgage all appointed MERS to serve as mortgagee on their behalf.

On March 4, 2009, six months <u>before</u> it had received the assignment of the mortgage from MERS in September 2009, referred to above, CitiMortgage filed a foreclosure action in state court. On June 30, 2009, before a final order was entered in that action, Debtors filed their Chapter 7 bankruptcy petition.

As stated above, on September 1, 2009, two months after the Debtors filed this bankruptcy, MERS assigned the mortgage to CitiMortgage. The assignment was properly recorded on September 21, 2009. Susan Wood, as Vice President for MERS, was authorized to, and did, execute the assignment pursuant to her status as a MERS certifying officer. Approximately six months later, on March 20, 2010, CitiMortgage filed a motion for relief from the automatic stay, seeking leave to proceed with the foreclosure. In the motion for stay relief, CitiMortgage alleged that Debtors were approximately 24 months and $22,000 delinquent on their note payments. The Trustee objected to the stay relief motion, alleging that CitiMortgage had not demonstrated standing to foreclose. On May 21, 2010, Ginnie Mae transferred its beneficial rights in the note and mortgage to CitiMortgage. Ultimately, an order was entered denying the motion for relief from stay,[6] and the Trustee filed this adversary proceeding.

---

[6] Doc. 36 in the main case. That order indicated: "Motion is denied at the request of Movant's counsel, after being advised that Court would allow trustee to conduct discovery [regarding standing issues], not based on any finding that Movant is, or is not, adequately protected."

-5-

There is no dispute that CitiMortgage is the current holder and investor of the mortgage and note secured by the Debtors' property. The original note is locked in a fire-proof safe at the office of CitiMortgage's counsel.

## II. Analysis

### A. Standards for Motion for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is no "genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[7] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[8] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[9] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[10]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[11] In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need

---

[7] Fed. R. Civ. P. 56(a). Rule 56 is applicable to bankruptcy adversary proceedings via Federal Rule of Bankruptcy Procedure 7056.

[8] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[9] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[10] *Id.* (citing *Anderson*, 477 U.S. at 248).

[11] *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)).

simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[12]

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[13] To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[14]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

### B. The Trustee's Response to CitiMortgage's Amended Motion for Summary Judgment

The Trustee's response to CitiMortgage's amended motion for summary judgment improperly "controverts" material facts with speculation, and attempts to imply that discovery is not yet complete because CitiMortgage holds additional information necessary for the Trustee to oppose summary judgment. The Trustee also

---

[12] *Id.* (citing *Celotex Corp.*, 477 U.S. at 325).

[13] *Id.* (citing Federal Rule of Civil Procedure 56).

[14] *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002) (internal quotations omitted).

[15] *Celotex Corp.*, 477 U. S. at 327.

responds to many of CitiMortgage's asserted uncontroverted material facts by stating that she is without sufficient information or knowledge to respond and that she therefore disputes the asserted fact.

As required by the Federal Rules of Civil Procedure, a party asserting that a fact is disputed must support that assertion by citations to the record or by showing that the materials cited by the movant do not support the fact.[16] In addition, if a party claims that facts remain unavailable for the party to oppose summary judgment, that party must show, "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."[17] The Trustee has complied with neither of these requirements for opposing summary judgment. Furthermore, the parties' agreed pretrial order noted that all discovery was complete long before the summary judgment motion now at issue was filed.[18] Indeed, there are no pending discovery requests and no motion to compel was ever filed in this case. As a result, Rule 56(e)(2) permits the Court to consider the facts undisputed for purposes of this motion.

---

[16] Fed. R. Civ. P. 56(c); *see also Diaz*, 289 F.3d at 674 ("[T]he non-movant must either establish the existence of a triable issue of fact under Fed. R. Civ. P. 56[(c)] or explain why he cannot . . . under Rule 56[(d)]."). Fed. R. Bankr. P. 7056 states that Rule 56 applies in adversary proceedings.

[17] Fed. R. Civ. P. 56(d); *see also Guthrie v. Sawyer*, 970 F.2d 733, 738 (10th Cir. 1992) (concluding that it is not enough, in response to a motion for summary judgment, to assert that discovery is incomplete, that facts necessary to oppose summary judgment are unavailable, or that the opposing party controls the evidence supporting an allegation).

[18] *See* Doc. 58 at p. 9 ¶ 14.3 ("The Court finds that this case is at issue, all discovery is complete, and that the case will be ready for trial upon entry of this order . . . .").

-8-

### C. Section 506 Claim: was CitiMortgage a Secured Creditor as of the Filing Date?

Interests in property are governed by state law.[19] The Court's task is to determine whether CitiMortgage was a secured creditor pursuant to 11 U.S.C. § 506 on the Debtor's bankruptcy petition filing date—June 30, 2009.

The Trustee argues that the mortgage and note were split at the time the bankruptcy petition was filed. As of April 25, 2006, when Kaw Valley endorsed the note to Irwin Mortgage, Irwin Mortgage held the note until the beneficial rights in the note were transferred to Ginnie Mae in May 2006. Irwin Mortgage remained the servicer. In January 2007, CitiMortgage then took over as servicer for Irwin Mortgage, and CitiMortgage became the holder of the beneficial rights of the note when Ginnie Mae transferred those rights to CitiMortgage on May 21, 2010. From April 25, 2006 (when Kaw Valley assigned the mortgage to MERS) until September 1, 2009, MERS held the mortgage. On September 1, 2009, MERS assigned the mortgage to CitiMortgage.

Therefore, on the June 30, 2009 bankruptcy petition date, Ginnie Mae held the beneficial rights of the note, CitiMortgage acted as servicer of the note, and MERS held the mortgage. Although it is true that a "split" between a mortgage and note renders the mortgage unenforceable absent an agency relationship between the holder of the mortgage and the holder of the note,[20] the presence of an agency relationship between

---

[19] *Butner v. United States*, 440 U.S. 48, 54–55 (1979).

[20] *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 540, 516 P.3d 158, 167 (2009).

-9-

the two parties acts to ensure that the mortgage still secures the note.[21] There is no split when the mortgage is held by an agent of the holder of the note.[22] An express agency relationship is created in Kansas when "the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act" or when "the principal and agent intend to create a relationship whereby when the agent acts on this authority, others will believe in and rely on the agent's acts."[23] An apparent agency relationship is created in Kansas when "the principal allows a third party to conclude that the purported agent is, in fact, an agent of the principal despite the lack of authority granted to the purported agent."[24] As the Restatement (Third) of Property (Mortgages) states: "The trust or agency relationship may arise from the terms of the assignment, from a separate agreement, or from other circumstances."[25] The Restatement also points out that "[c]ourts should be vigorous in seeking to find such a relationship, since the result is otherwise likely to be a windfall for the mortgagor

---

[21] *Martinez v. Mortgage Electronic Registration Systems, Inc. (In re Martinez)*, 444 B.R. 192, 203–04 (Bankr. D. Kan. 2011); Restatement (Third) of Property (Mortgages) § 5.4 (1997) (stating that a mortgage may be enforced "by, or on behalf of, a person who is entitled to enforce the obligations the mortgage secures").

[22] *In re Tucker*, 441 B.R. 638, 643–44 (Bankr. W.D. Mo. 2010). The *Tucker* case relied on the Restatement (Third) of Property (Mortgages), upon which the Kansas courts have also relied. *See, e.g.*, *Fidelity Bank v. King*, 281 Kan. 1278, 1281, 136 P.3d 465 (2006); *Am. Gen. Fin. Serv., Inc. v. Carter*, 39 Kan. App. 2d 683, 689, 184 P.3d 273 (2008); *Bankers Trust Co. v. United States*, 29 Kan. App. 2d 215, 218, 25 P.3d 877 (2001).

[23] *Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 535, 920 P.2d 947, 952 (1996).

[24] *Id.*; *see also U.S. Bank, N.A. v. Howie*, 47 Kan. App. 2d 690, 697–99, 280 P.3d 225, 230–31 (Kan. Ct. App. 2012) (discussing agency relationships in MERS context).

[25] Restatement (Third) of Property (Mortgages) § 5.4, cmt. e (1997).

-10-

and the frustration of [the holder of the note's] expectation of security."[26]

Here, the undisputed material facts show that on April 25, 2006, when the note was held by Irwin Mortgage and the mortgage was assigned to MERS, Irwin Mortgage was a MERS System member subject to the MERS terms and conditions and rules of membership, thereby agreeing that MERS should act on its behalf as mortgagee. The MERS governing documents contain the parties' express agreement that "MERS shall serve as mortgagee of record with respect to all such mortgage loans *solely as nominee*, in an administrative capacity, for the beneficial owner or owners thereof from time to time."[27] MERS was also directed, by the parties' same governing documents, to "at all times comply with the instructions of the holder of mortgage loan promissory notes."[28] The MERS governing documents further required that MERS at all times comply with the instruction of Irwin Mortgage, and authorized MERS to take certain actions at Irwin Mortgage's direction, including assignment of the mortgage or to institute a foreclosure action. The rights in the mortgage were subsequently transferred to Ginnie Mae in May 2006. Then, in December 2006, CitiMortgage and Irwin Mortgage entered into an agreement whereby CitiMortgage was granted the servicing obligations for Irwin Mortgage.

CitiMortgage was a MERS System member, subject to it terms and rules, and Ginnie Mae was also a MERS member and appointed MERS to hold legal title to the

---

[26] *Id.*

[27] McLaughlin Affidavit Exh. A. ¶ 2 (emphasis added).

[28] *Id.* ¶ 3.

-11-

mortgage on its behalf, just as Irwin Mortgage and CitiMortgage had done. These facts are supported by the affidavits of Bryan Schrepel, bankruptcy specialist with CitiMortgage, and Daniel McLaughlin, vice president of MERS and executive vice president of MERSCORP Holdings, Inc. Both affidavits state that they are based on the personal knowledge and review of files of the entities, and neither affidavit was properly challenged by the Trustee.

An express agency relationship existed between Irwin Mortgage and MERS when the note was assigned to MERS in April 2006. The same agency relationship then existed between both Ginnie Mae and MERS, and CitiMortgage and MERS, until CitiMortgage held both the mortgage and note in May 2010. There is no dispute that CitiMortgage currently holds both the note and mortgage on the real property. As a result, under Kansas law, CitiMortgage is entitled to enforce the note and the mortgage secured by the Debtors' property.[29] The Trustee's claim that the mortgage and note were split at the time the bankruptcy petition was filed in June 2009 fails based on the agency relationship described above, and CitiMortgage is entitled to summary judgment on the Trustee's challenge to the validity, priority, or extent of CitiMortgage's lien or interest in the Debtors' property.

## III. Conclusion

The Court finds no split of the mortgage and note on the date Debtors filed

---

[29] *See, e.g.*, K.S.A. § 84-3-301 (stating that a person entitled to enforce an instrument is the holder of the instrument); § 84-3-205(b) (stating that blank endorsements are bearer paper and negotiable by transfer alone).

Case 11-07029    Doc# 78    Filed 12/19/12    Page 12 of 13

bankruptcy. An agency relationship existed throughout the endorsements and assignments of the mortgage and note in this case. CitiMortgage is the undisputed current holder of the mortgage and note. As a result, the Court grants the amended motion for summary judgment[30] of CitiMortgage on the only count remaining in the Plaintiff's Complaint.

**IT IS, THEREFORE, ORDERED** that the Amended Motion for Summary Judgment of Defendant CitiMortgage, Inc. is granted.

###

---

[30] Doc. 70.